# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* B.S.

**No. 18-0916** (Wood County 17-JA-185)

**FILED**

**March 15, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father M.E., by counsel Jessica E. Myers, appeals the Circuit Court of Wood County's September 17, 2018, order terminating his parental rights to B.S.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Robin S. Bonovitch, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period and terminating his parental rights instead of granting him a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In July of 2017, the DHHR filed an abuse and neglect petition against petitioner and the mother alleging that the child tested positive for methamphetamine, amphetamines, and THC at birth and suffered from withdrawal symptoms.[2] Petitioner disclosed to the DHHR that the mother actively used methamphetamine during her pregnancy with the child. The DHHR's attempts to serve petitioner with the petition failed, but petitioner later admitted that he was aware of the proceedings. According to the DHHR, petitioner failed to attend the preliminary hearing on July 31, 2017, because he appeared late and was denied entry by an unidentified court employee. Petitioner failed to participate in the subsequent proceedings and was incarcerated in April of 2018 upon charges of malicious wounding, receiving and transferring stolen property, and

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

[2]Although it was uncertain who the father of the child was, petitioner was named as a respondent in the initial petition and his paternity of the child was later confirmed.

1

possession of a firearm on school grounds. Also in April of 2018, the DHHR filed an amended petition adding allegations of abandonment by the father.

However, petitioner's paternity of the child was confirmed and he was transported from prison to the adjudicatory hearing on August 1, 2018. Petitioner testified that he believed that the child was his son throughout the mother's pregnancy and that he tried to dissuade the mother from abusing drugs during the pregnancy. He admitted that he had not seen the child since the child's birth. Next, a DHHR caseworker testified that there was no record of any calls or messages from petitioner to inquire about the child. At the conclusion of the hearing, the circuit court adjudicated petitioner as an abusing parent based upon his abandonment of the child. The circuit court found that petitioner knew the child was his son and knew the child was in the DHHR's custody, but failed to contact the DHHR or attempt to provide any support to the child. The circuit court further found that petitioner demonstrated a settled purpose to forego his parental responsibilities to the child and that petitioner was unable to provide care to the child due to his current and indefinite period of incarceration.

On September 12, 2018, the circuit court held a dispositional hearing during which petitioner moved for a post-adjudicatory improvement period. Petitioner testified that he would comply with any services required by an improvement period. Petitioner also testified that he expected to be released on home incarceration following his criminal trial, if he could secure a residence. He also testified that he would participate in inpatient substance abuse treatment once he was released from incarceration. At the time of the dispositional hearing, the child was nearly fourteen months old and had been in the DHHR's custody since birth. At the conclusion of the hearing, the circuit court denied petitioner's motion for a post-adjudicatory improvement period and found that petitioner showed "very little interest" in the child since his birth. The circuit court further found that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the termination of petitioner's parental rights was in the child's best interest. Ultimately, the circuit court terminated his parental rights in its September 17, 2018, dispositional order.[3] It is from this order that petitioner appeals.

The Court has previously established the following standard of review:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if

---

[3]The mother's parental rights were also terminated. According to respondents, the permanency plan for the child is adoption in his current foster placement.

the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). Upon our review, this Court finds no error in the proceedings below.

First, petitioner argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period. In support, he asserts that he "had taken steps to be released from jail, made attempts to secure treatment and was willing to participate in additional services." We do not find this argument persuasive.

West Virginia Code § 49-4-610(2)(B) provides that a parent may be granted an improvement period if the parent "demonstrates, by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period." Additionally, we have stated that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015). Here, other than his own self-serving testimony, petitioner failed to demonstrate by clear and convincing evidence that he would be likely to fully participate in a post-adjudicatory improvement period. While he asserts that he had "taken steps to be released from jail," at the time of the dispositional hearing, petitioner was still incarcerated and awaiting trial. Further, the record shows that petitioner failed to participate in the majority of the proceedings and showed "very little interest" in the child since the child's birth. Based on this evidence, the circuit court did not err in denying petitioner's motion for a post-adjudicatory improvement period.

Next, petitioner argues that the circuit court erred in terminating his parental rights instead of granting him a less-restrictive dispositional alternative. Petitioner asserts that, pending his release from incarceration, he would be able to participate in services and correct the conditions of abuse and neglect.

West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate parental rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the children's welfare. West Virginia Code § 49-4-604(c)(4) clearly indicates that a situation where there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent "abandoned the child." Petitioner's argument is speculative and not supported by evidence. Petitioner failed to participate in the majority of the proceedings, even during periods of time when he was not incarcerated. He was adjudicated as an abusing parent due to his abandonment of the child. Petitioner knew that the child was in the DHHR's custody, but failed to contact the DHHR or provide any support to the child. At the time of the dispositional hearing, the child had been in foster care for fourteen months since his birth. We have held as follows:

> "[C]ourts are not required to exhaust every speculative possibility of parental improvement . . . where it appears that the welfare of the child will be seriously threatened, and this is particularly applicable to children under the age

of three years who are more susceptible to illness, need consistent close interaction with fully committed adults, and are likely to have their emotional and physical development retarded by numerous placements." Syl. Pt. 1, in part, *In re R.J.M.,* 164 W.Va. 496, 266 S.E.2d 114 (1980).

*Cecil T.*, 228 W. Va. at 91, 717 S.E.2d at 875, syl. pt. 4. Due to his abandonment of the child and his indefinite incarceration, it is clear that there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future and that the termination of his parental rights was in the child's best interest, especially in light of the child's young age.

Further, while petitioner argues that "given [his] efforts, a less drastic dispositional alternative should have been applied in this case," we have held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Although petitioner claims that he made efforts to be released from incarceration, the record shows that he was still incarcerated at the time of the dispositional hearing and awaiting trial. As previously discussed, there was no reasonable likelihood that petitioner could substantially correct the conditions of abuse and neglect in the near future. Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 17, 2018, dispositional order is hereby affirmed.

Affirmed.

**ISSUED**: March 15, 2019

**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison